**Daniel Snyder, OSB No. 78385**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 06105**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

    Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |
|---|---|
| GAIL THOMPSON-IVORY, | Case No. 3:17-cv-01804 |
| PLAINTIFF, | **COMPLAINT** |
| v. | |
| CITY OF PORTLAND; and MARIANNA KANWIT a.k.a. ANNA KANWIT, | 42 U.S.C. § 1983 (VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS); UNLAWFUL EMPLOYMENT ACTIONS (TITLE VII AND RELATED STATE CLAIMS) |
| DEFENDANTS. | **JURY TRIAL DEMANDED** |

### I. PRELIMINARY STATEMENT

1.      This is an action for declaratory, injunctive, and monetary relief, including

punitive damages, equitable relief, compensatory damages, back pay, front pay, and attorneys'

PAGE 1 – COMPLAINT AND DEMAND FOR JURY TRIAL

fees and costs to redress Defendants' violation of Plaintiff's federally protected rights and state common law and statutory claims.

## II. JURISDICTION

2.      Plaintiff's first claim arises under 42 U.S.C. § 1983. The Court has jurisdiction of this action under 28 U.S.C. § 1331, federal question jurisdiction, 28 U.S.C. § 1331, and 28 U.S.C. § 1343, civil rights jurisdiction.

3.      Plaintiff requests this Court exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutes or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.      On February 7, 2017, Plaintiff, through her attorney, sent to the City of Portland, Bureau of Risk Management, and the Portland City Attorney, a notice of tort claim for Plaintiff against the City of Portland.

5.      All preconditions to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5 and for Oregon employment actions have been satisfied.

(A)      On or about March 17, 2017, Plaintiff filed charges of employment discrimination and retaliation with the Oregon Bureau of Labor and Industries, Case No. DPEMDP170317-10326, for gender, race and age discrimination, injured worker discrimination, and aiding and abetting discrimination.

(B)      On or about March 22, 2017, BOLI co-filed for Plaintiff a charge of employment discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC), Case No. 38D-2017-00404, for Title VII discrimination and age discrimination. Said filing was within 300 days of the alleged employment discrimination against Plaintiff.

(C)      On or about August 14, 2017, BOLI issued a 90-day notice of right to file civil suit letter to Plaintiff in Case No. DPEMDP1703-10326.

(D)      On September 7, 2017, the EEOC issued a 90-day right-to-sue letter to Plaintiff in Case No. 38D-2017-00404.

PAGE 2 – COMPLAINT AND DEMAND FOR JURY TRIAL

(E)     Plaintiff filed this complaint within 90 days of the date of the right to sue letters from the EEOC and BOLI.

6.     Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District.

7.     On September 22, 2017, Plaintiff, through her attorney, sent to the City of Portland, Bureau of Risk Management, and to the City Attorney, a supplemental notice of tort claim for Plaintiff.

### III. PARTIES

8.     Plaintiff Gail Thompson-Ivory (hereafter "Plaintiff") is an African-American female. Plaintiff is a resident of the State of Oregon. Plaintiff is a citizen of the United States of America.

9.     Defendant City of Portland (hereafter "Defendant City" or "Defendant City of Portland") is an Oregon Municipal Corporation. Defendant City conducts business in Portland, Multnomah County, Oregon. At all material times, Defendant City had more than 500 employees.

10.     At all relevant times as plead herein, Defendant Marianna Kanwit, also known as "Anna" Kanwit (hereafter "Defendant Kanwit"), was the Director of Human Resources and was the head of Defendant City of Portland's Bureau of Human Resources (hereafter "BHR"). Defendant Kanwit was Director of the Bureau of Human Resources from May 2012 until she abruptly resigned in November 2017.

11.     Defendant Kanwit is a resident of Oregon. Defendant Kanwit is Caucasian.

12.     At all relevant times as plead herein, Plaintiff was a long time employee of Defendant City. At all times material, Plaintiff worked for Defendant City in Portland, Multnomah County, Oregon in BHR as a Human Resources Business Partner, Employment and Development Coordinator.

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

13.     In Plaintiff's job as a Human Resources Business Partner, Employment and Development Coordinator, Plaintiff was supervised by Lynda Lewis, Manager of Diversity, Outreach, and Employment Resources (DOER). DOER is a section located in the BHR.

14.     At all times relevant as plead herein, Defendant Kanwit and Lynda Lewis were acting within the course and scope of their employment with the Defendant City of Portland.

## IV. GENERAL FACTUAL ALLEGATIONS

15.     At all times material, Plaintiff was an older worker. During the events alleged herein, Plaintiff was sixty-two (62) and sixty-three years old (63).

16.     Plaintiff is of African descent. She identifies her race as African-American.

17.     In 1978, Plaintiff went to work for Defendant City. In 1986, Plaintiff was assigned to the Bureau of Human Resources. Plaintiff was assigned to BHR until June 30, 2017 when Defendant Kanwit terminated her employment.

18.     On February 6, 2006, Plaintiff was promoted to the job of Human Resources Business Partner, Employment and Development Coordinator. In that job, Plaintiff served as the lead worker for the Senior Human Resources Analysts in recruiting. Ms. Lewis referred to Plaintiff as her "second in command." Ms. Lewis assigned her own work to Plaintiff for Plaintiff to complete as well as Plaintiff's own responsibilities. Plaintiff frequently had to work overtime to complete all of these duties, typically by working from home.

19.     Ms. Lewis was the formal NEOGOV administrator for the Bureau of Human Resources. Ms. Lewis showed Plaintiff performance reviews that she received from Defendant Kanwit which showed that Defendant Kanwit had assigned the implementation of NEOGOV to Ms. Lewis. Although Ms. Lewis was the NEOGOV administrator, she lacked understanding of the NEOGOV system, its capabilities, and why functions were not being used.

20.     Other Bureau of Human Resources employees had some NEOGOV administrator rights. Those employees included both Senior Human Resources Analysts and administrative staff. In 2016 and 2017, the persons who had NEOGOV administrator rights included Teresa

PAGE 4 – COMPLAINT AND DEMAND FOR JURY TRIAL

Dahrens, Tamara Larison, John DiGrazia, Regina Birch, Kyanne Probasco, Cydney Kahn, Loan Tran, and Plaintiff.

21.      Plaintiff repeatedly brought to Ms. Lewis's attention that BHR staff was making NEOGOV errors in reports Lewis submitted to the City Auditor and to Defendant Kanwit. Plaintiff also informed Defendant Kanwit that the reports Ms. Lewis gave to Plaintiff and others contained incorrect NEOGOV information. The errors that Plaintiff brought to the attention of Ms. Lewis and Defendant Kanwit included using incorrect reports to answer requests for information, using incorrectly prepared studies, and incorrect application of some system functionalities by administrative staff. Plaintiff told Defendant Kanwit that the incorrect application of system functionalities could result in loss of statistical information and incorrect information regarding NEOGOV capabilities.

22.      Despite Plaintiff drawing NEOGOV and report errors to the attention of Ms. Lewis and Defendant Kanwit, they made comments to Plaintiff about her age. Ms. Lewis said to Plaintiff that younger people were better at using technology and that Plaintiff was too old to use technology. Ms. Lewis said also that another employee, Alan Messer, was "old." Defendant Kanwit said that Plaintiff had worked for Defendant City for thirty-three (33) years and younger people understood technology better.

23.      On April 9, 2015, Plaintiff was injured on the job for Defendant City when she fell down at work. Plaintiff fell down some exterior stairs in the Portland Building. Plaintiff filed a workers' compensation claim with Defendant City. Defendant City accepted the compensability of her workers' compensation claim, but only for a disabling shoulder strain and contusion of her leg. Defendant Kanwit was aware that Plaintiff had been injured on the job and that she had made a worker's compensation claim.

24.      In September 2015, Defendant City denied Plaintiff's bilateral rotator cuff tears resulting from Plaintiff's on-the-job injury of April 9, 2015. Plaintiff then initiated an

PAGE 5 – COMPLAINT AND DEMAND FOR JURY TRIAL

administrative proceeding by requesting a workers' compensation hearing concerning Defendant City's denial of her bilateral rotator cuff injuries.

25.    Plaintiff took medical leave on more than one occasion for her own serious health condition from her on-the-job injury. From mid-September 2015 through mid-November 2015, Plaintiff was on medical leave due to her bilateral rotator cuff injuries sustained in the April 9, 2015 on-the-job injury and resulting surgery. Since Plaintiff's workers' compensation claim for this injury had been denied, Plaintiff had to draw upon her accrued paid time off to cover her absences from work, while had the claim not been denied, she would have received workers' compensation benefits.

26.    In November 2015, Plaintiff returned to work, and then was off work again on medical leave for her shoulder injuries from late December 2015, through mid-January 2016. Plaintiff again used accrued paid time off to cover her absence from work since her claim had been denied. During Plaintiff's medical leave due to the on-the-job injury, Ms. Lewis assigned Plaintiff's NEOGOV responsibility to other staff, but primarily to Cydney Kahn, a considerably younger, Caucasian, employee who worked as a Senior Administrative Assistant. Kahn also had a very limited Human Resources background.

27.    Plaintiff always received good performance reviews from Defendant City. In February 2016, Plaintiff received a very high performance rating from Ms. Lewis, which was signed by Defendant Kanwit. Defendant Kanwit awarded Plaintiff eighty (80) hours of management leave as a reward for her good performance.

28.    Following Plaintiff's return to work from medical leave in January 2016, there was a change in the terms and conditions of Plaintiff's employment. When Plaintiff returned from leave in January 2016, Lewis continued having Ms. Khan perform Plaintiff's NEOGOV responsibilities. Kahn continued with those responsibilities until Ms. Kahn was temporarily appointed as a Human Resources Analyst for the City of Portland Parks Bureau.

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

29.     Ms. Lewis talked to Plaintiff about her plan to retire in 2016. Lewis repeatedly told Plaintiff that Plaintiff was the person who was best qualified to take over Ms. Lewis's job when Ms. Lewis retired from her position.

30.     Plaintiff learned that Defendant City was opening recruitment for Ms. Lewis's position in August 2016. Ms. Lewis also told Plaintiff that Defendant Kanwit did not agree that Plaintiff was qualified to take over Ms. Lewis's position. Ms. Lewis told Plaintiff that Defendant Kanwit refused to specify in what manner Plaintiff was unqualified.

31.     In late July 2016, Plaintiff asked Defendant Kanwit if she would consider her for Ms. Lewis's position when Ms. Lewis retired. Defendant Kanwit discouraged Plaintiff from applying for Ms. Lewis's position. Defendant Kanwit made a vague statement that Plaintiff did not have the skill set for the job, but would not say what skills Plaintiff was lacking. Defendant Kanwit ended the conversation by saying, "There will always be a place for you here, Gail."

32.     Plaintiff received a draft report from the City Auditor which contained incorrect information about the number of recruitments that BHR was doing. The report was based on incorrect NEOGOV information provided by Ms. Lewis. Ms. Lewis had someone other than Plaintiff run the incorrect numbers in NEOGOV. Because Ms. Lewis was out of the office when Plaintiff saw the report, Plaintiff asked to meet with Defendant Kanwit to apprise her of the mistakes. Plaintiff told Defendant Kanwit that the City Auditor's report contained NEOGOV errors. Defendant Kanwit said she would have the report corrected.

33.     On August 24, 2016, a Final Opinion and Order was issued by a Workers' Compensation Division Administrative Law Judge setting aside Defendant City's partial denial of Plaintiff's April 9, 2015 workers' compensation claim. As a result of that Order, all of Plaintiff's medical conditions were now to be fully accepted. Defendant City was ordered to accept the denied portions of Plaintiff's workers' compensation claim. However, Defendant City never repaid Plaintiff for her paid time off taken while she was on medical leave despite multiple oral and written requests from Plaintiff that it do so.

PAGE 7 – COMPLAINT AND DEMAND FOR JURY TRIAL

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

34.     On September 21, 2016, less than a month after the worker's compensation Order was issued favorable to Plaintiff, Defendant Kanwit changed the terms and conditions of Plaintiff's employment with Defendant City. Plaintiff was then sixty-two (62) years old. Ms. Lewis told Plaintiff that Defendant Kanwit was taking formal action to end Plaintiff's NEOGOV responsibilities, giving Plaintiff's NEOGOV responsibility to Cydney Khan, who already had those duties on a de facto basis. Plaintiff asked Ms. Lewis why the change in her assignment was occurring. Ms. Lewis said that Defendant Kanwit told her that Plaintiff had been given enough time to complete bureau NEOGOV implementation and that Plaintiff did not do it. Plaintiff questioned this as Ms. Lewis had directed Plaintiff's work on this project and knew NEOGOV implementation was completed within the constraints of the City policies and procedures. Ms. Lewis directed Plaintiff to ask Defendant Kanwit for any further information.

35.     Before September 21, 2016, Plaintiff had not had meetings, discussions, or received written communication of any kind indicating any issues with getting other City Bureaus to use NEOGOV. Plaintiff had not received any prior performance criticism regarding any NEOGOV responsibilities she had.

36.     On September 21, 2016, Plaintiff requested a meeting with Defendant Kanwit to discuss Defendant Kanwit's decision to formally take away her NEOGOV responsibilities. On September 22, 2016, Defendant Kanwit sent Plaintiff an email in which she wrote that she felt there was not a reason to meet with Plaintiff unless Ms. Lewis was present, Plaintiff was unable to get Defendant Kanwit or Ms. Lewis to arrange a joint meeting with Defendant Kanwit and Ms. Lewis.

37.     Beginning on and after September 22, 2016, Defendant City and Ms. Lewis further changed the terms and conditions of Plaintiff's employment with Defendant City. On and after September 22, 2016, Ms. Lewis shunned Plaintiff, stopped speaking to Plaintiff and relied solely upon email to communicate. Lewis excluded Plaintiff from the normal duties, tasks, and activities of her position, including, but not limited to, addressing unit issues, assignments,

PAGE 8 – COMPLAINT AND DEMAND FOR JURY TRIAL

resolution of customer complaints, development of staff work assignments and yearly performance evaluations, unit staffing issues, and completion of performance goals and objectives.

38.     On September 27, 2016, at approximately 9:00 a.m., Ms. Lewis gave Plaintiff a directive to write up the responsibilities of the NEOGOV Administrator and turn it in to her by 1:00 p.m. that day, although Lewis was the NEOGOV Administrator. This assignment was given to Plaintiff to complete at the same time she was scheduled by Ms. Lewis to hold weekly, one-on-one, thirty-minute meetings with each staff member she led regarding their weekly work updates. The responsibility for those meetings would have been Ms. Lewis's, but Ms. Lewis abruptly assigned the meetings to Plaintiff because Ms. Lewis said she was completing a special project assigned by Defendant Kanwit. Ms. Lewis said that she expected Plaintiff to both hold the scheduled meetings and to also have the NEOGOV assignment completed by 1:00 p.m. the same day. Plaintiff completed the project by 1:00 p.m. and turned the project in to Ms. Lewis by email. Plaintiff copied Defendant Kanwit on the email.

39.     On October 3, 2016, Defendant City again changed the terms and conditions of Plaintiff's employment. Ms. Lewis told Plaintiff that Regina Birch, a BHR employee assigned to the Fire Bureau, was leaving the Fire Bureau and she was temporarily assigning all Fire Bureau Human Resources work to Plaintiff until Lewis had an analyst to replace Ms. Birch.

40.     On October 7, 2016, Plaintiff approached Defendant Kanwit in the break room and asked Defendant Kanwit why it was so difficult to meet with her about her job reassignment to the Fire Bureau and the end of her NEOGOV responsibilities. Defendant Kanwit said she would set up a meeting, but Kanwit never met with her about the end of NEOGOV responsibilities and her job reassignment

41.     On October 11, 2016, Defendant City again changed the terms and conditions of Plaintiff's employment with Defendant City. Ms. Lewis permanently changed Plaintiff's major job duties. Ms. Lewis told Plaintiff that she had made the decision to permanently assign

PAGE 9 – COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff to the Fire Bureau as the Fire Bureau's permanent analyst. Plaintiff inquired why this was a permanent assignment. Ms. Lewis said told Plaintiff that she did not have to tell Plaintiff when she made the decision or why she made the decision.

42.     For years, Plaintiff had been providing personal and intimate care for her seriously ill elderly mother. Plaintiff had requested and Ms. Lewis had approved flex time for Plaintiff to accomplish this care, allowing her to arrive for work later and to take a shorter lunch break to cover her care responsibilities. This changed after Ms. Lewis permanently assigned Plaintiff to the Fire Bureau.

43.     Before Regina Birch left her assignment, Ms. Birch had been working on recruitment for Fire Battalion Chief. The recruitment included an assessment center test. There are normally two BHR employees present at these tests. The activity dates and times were already approved and committed to by the Fire Bureau and the Bureau of Human Resources before Plaintiff was assigned to the Fire Bureau. The activity times were in the early morning. Plaintiff spoke to Ms. Lewis about the scheduled early morning testing and reminded Ms. Lewis that she could not attend because she was caring for her mother's serious health condition. In the past, Ms. Lewis had allowed analysts to request assistance from other analysts if there was an early morning appointment that needed to be covered. Plaintiff asked Ms. Lewis to assign another employee to assist her so that she could care for her mother in the morning and then report to the assessment center. Ms. Lewis inaccurately told Plaintiff that no other staff was available to assist, which was also unusual as Ms. Lewis always had two people at assessment centers. Ms. Lewis said that Teresa Dahrens, Plaintiff's back up, was too busy. However, when Plaintiff spoke to Ms. Dahrens, Ms. Dahrens said she was never asked to assist Plaintiff and would have gladly covered for Plaintiff.

44.     Because Ms. Lewis would not assist Plaintiff with her conflict, Fire Chief Joseph Budge assisted Plaintiff by assigned his own staff to help Plaintiff with covering the early

PAGE 10 – COMPLAINT AND DEMAND FOR JURY TRIAL

morning assessment. Fire Chief Budge also wrote a letter praising Plaintiff's excellent service to the Fire Bureau.

45.     On October 31, 2016, Ms. Lewis issued a revised unit organizational chart which showed that the Fire Bureau was Plaintiff's sole responsibility. All of Plaintiff's other responsibilities as lead worker in DOER were removed. Defendant Kanwit and Ms. Lewis assigned much of Plaintiff's former duties and responsibilities to Tamara Larison and assigned the Executive recruitments responsibility to Teresa Dahrens.

46.     On or about November 4, 2016, Plaintiff wrote Defendant Kanwit. Plaintiff reported to Defendant Kanwit that she was being discriminated and retaliated against as an injured worker for using medical leave and because of her age and race.

47.     In early December 2016, Defendant Kanwit met with Plaintiff and informed Plaintiff that Elisabeth Nunes, a Caucasian who previously worked for Multnomah County, would be the interim Manager of Diversity, Outreach and Employment. At that time Defendant Kanwit also informed Plaintiff she was having the analysts and the administrative support staff participate in a process improvement project and that Plaintiff would not be participating in that process because Defendant Kanwit considered Plaintiff's position to be supervisory.

48.     In 2017, Defendant Kanwit, interim DOER Manager Elizabeth Nunes, Deputy Human Resources Director David Rhys, Budget Manager Lawrence Nelson, and Nelson's direct report Natasha Cavendar, met with Plaintiff and showed her their process improvement report. The process improvement report was also intended to justify an increase to the budget for BHR by showing that BHR needed more analysts to do an increasing number for recruitments. Plaintiff immediately noticed that the report contained incorrect NEOGOV statistics for the number of recruitments that the Bureau of Human Resources did. Plaintiff immediately drew that discrepancy to the attention of Defendant Kanwit, Ms. Nunes, Mr. Rhys, Mr. Nelson, and Ms. Cavendar. Specifically, Plaintiff told them that the report grossly overstated the number of Executive recruitments for Directors and Assistant Directors positions. The report listed 107

PAGE 11 – COMPLAINT AND DEMAND FOR JURY TRIAL

Executive recruitments for 2016. Defendant Kanwit then asked Natasha Cavendar if the 107 recruitments were correct. Ms. Cavendar replied that the figure was correct. Plaintiff disagreed and pointed out that there are not 107 existing Directors and Assistant Director positions in City government. Plaintiff told them that BHR usually did one to two Executive recruitments per year. Plaintiff told them that she recalled that the most Executive recruitments that the Bureau had done was in calendar year was 2016, when there were four or five Executive recruitments. Natasha Cavendar said Tamara Larison and Loan Tran had assured her the number were correct. Defendant Kanwit said she would check and if a mistake was made, the number of Executive recruitments reported would be changed. Despite this, Defendant Kanwit did not correct the inaccurate report and used 107 Executive recruitments in budget documents to make it look like there were more recruitments being done than there really were. Those numbers are in direct conflict with what was reported to the Auditor's Office for much of the same time period.

49.      On January 10, 2017, Defendant Kanwit submitted a budget in which she requested the reclassification of Plaintiff's position as a Human Resources Coordinator. Plaintiff's position was reclassified from a lead worker down to a Human Resources Technician.

50.      In early March 2017, Defendant Kanwit told Plaintiff that she wanted Plaintiff to resign. Defendant Kanwit told Plaintiff that she had spoken to her attorney, Jennifer Johnston, about Plaintiff's workers' compensation claim and what the outcome of the claim would be if Plaintiff resigned.

51.      On July 1, 2017, Defendants City and Defendant Kanwit ended Plaintiff's employment with Defendant City. Before being terminated, Plaintiff received an annual salary of approximately $93,413.00, plus fringe benefits, including health insurance benefits for herself, as well as participation in the Public Employee's Retirement System and the City of Portland's Deferred Compensation program.

/ / / /

/ / / /

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

### V. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**

**(Family and Medical Leave Act of 1993 - 29 U.S.C. § 2601 et seq.)**

Against Defendant City

52.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

53.     Defendant is an "employer" within the meaning of 29 U.S.C. § 2611(4).

54.     Defendant employed at least 50 employees for each working day during each of 20 or more calendar work weeks in 2015, 2016, and 2017.

55.     At all times material, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

56.     At all times in 2015, defendant employed 50 or more employees with 75 miles of the worksite where Plaintiff performed work for Defendant City.

57.     Plaintiff was employed by Defendant City for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.

58.     Plaintiff was employed by Defendant City for more than 12 months prior to commencing leave in 2015 and 2016.

59.     At all times material, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

60.     Plaintiff took medical leave protected by the Family Medical Leave Act (FMLA).

61.     At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

62.     Defendant interfered, discriminated, and retaliated against Plaintiff for engaging in the protected activity of taking leave under FMLA.

63.     Defendant interfered, discriminated, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff and refusing to reinstate Plaintiff to employment.

PAGE 13 – COMPLAINT AND DEMAND FOR JURY TRIAL

64.     As a direct and proximate result of Defendant's interference, discrimination, and retaliation, Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to Plaintiff's economic damages in an amount to be determined at trial.

65.     The Court should enter an order declaring that Defendant violated the FMLA.

66.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

67.     Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A).

68.     Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs incurred herein.

69.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SECOND CLAIM FOR RELIEF

### (42 U.S.C. § 1981 – Race Discrimination)

Against Defendant City of Portland

70.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

71.     As alleged above, Defendant City discriminated against Plaintiff with respect to the terms and conditions of her employment because of Plaintiff's race.

72.     As a result of Defendant City's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

/ / / /

/ / / /

/ / / /

PAGE 14 – COMPLAINT AND DEMAND FOR JURY TRIAL

## THIRD CLAIM FOR RELIEF

## (Title VII Civil Rights Act of 1964, 42 U.S.C. §2000e-2)

### Count I – Race Discrimination

Against Defendant City of Portland

73.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

74.     At all material times, Defendant City was an "employer" within the meaning of 42 U.S.C. § 2000e (b).

75.     Defendant City discriminated against Plaintiff with respect to the terms and conditions of her employment because of Plaintiff's race.

76.     As a result of Defendant City's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

### Count II – Race Retaliation

### (Title VII Civil Rights Act of 1964, 42 U.S.C. §2000e-2)

Against Defendant City of Portland

77.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

78.     At all material times, Defendant City was an employer within the meaning of 42 U.S.C. § 2000e (b).

79.     Defendant City discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment because Plaintiff opposed unlawful racial discrimination.

80.     As a result of Defendant City's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

/ / / /

/ / / /

PAGE 15 – COMPLAINT AND DEMAND FOR JURY TRIAL

## FOURTH CLAIM FOR RELIEF

### (42 U.S.C. § 1983 – Violation of the Equal Protection Clause)

Against Defendants City of Portland and Kanwit

81.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

82.    Defendants City of Portland and Kanwit, while acting under color of state law, violated Plaintiff's rights to equal protection of the law, as guaranteed by the Fourteenth Amendment to the United States Constitution, by treating Plaintiff differently and holding Plaintiff to a disparate and unequal standard because of her race as compared to other white and non-African-American employees, without rational basis and based upon vindictive action, illegitimate animus and ill will.

83.    Defendants City of Portland and Kanwit's conduct constituted the custom or policy of Defendant City.

84.    Defendant City, acting through Defendant Kanwit, terminated the employment of three African-American women, including Chaunci King, Shianne Scott, and Plaintiff, from Kanwit's Bureau of Human Resources between January 2015 and July 30, 2017.

85.    As a result of Defendants' conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

## FIFTH CLAIM FOR RELIEF

### (Unlawful Employment Practice – ORS 659A.030(1)(b))

Against Defendant City of Portland

86.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

87.    Defendant City is an "employer" within the meaning of ORS 659A.001 (4) and ORS 659A.030.

88.    In violation of ORS 659A.030 (1), Defendant City discriminated against Plaintiff with respect to the terms and conditions of her employment because of Plaintiff's race.

PAGE 16 – COMPLAINT AND DEMAND FOR JURY TRIAL

89.     As a result of Defendant City's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

## SIXTH CLAIM FOR RELIEF

### (Unlawful Employment Practice - ORS 659A.030(1)(f))

Against Defendant City of Portland

90.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

91.     Defendant City is an "employer" within the meaning of ORS 659A.001 (4) and ORS 659A.030.

92.     In violation of ORS 659A.030(1)(f), Defendant City discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment because Plaintiff opposed Defendant City's race discrimination against Plaintiff.

93.     As a result of Defendant City's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

## SEVENTH CLAIM FOR RELIEF

### (Discrimination for Initiating Administrative Proceeding – ORS Chapter 659A.230)

Against Defendant City of Portland

94.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

95.     As alleged above, on or about November 4, 2016, Plaintiff wrote Defendant Kanwit and reported to Defendant Kanwit that she was being discriminated and retaliated against as an injured worker for using medical leave, because of her age and race.

96.     On March 17, 2017, Plaintiff initiated an administrative proceeding against Defendant by filing charges of employment discrimination and retaliation with the Oregon Bureau of Labor and Industries. Said complaint was co-filed with the Equal Employment Opportunity Commission.

PAGE 17 – COMPLAINT AND DEMAND FOR JURY TRIAL

97.     Defendant discriminated and retaliated against Plaintiff by terminating her employment after she filed a BOLI complaint. Defendant's actions violated ORS 659A.230, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

98.     As a result of Defendant City's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

## EIGHTH CLAIM FOR RELIEF

### (ORS Chapter 659A.040 – Injured Worker Discrimination and Retaliation)

Against Defendant City of Portland

99.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

100.     Defendant City discriminated and retaliated against Plaintiff by changing the terms and conditions of her employment. Defendant's actions violated ORS 659A.040, are an unlawful employment practice, and caused Plaintiff economic and non-economic damages.

101.     Defendant City's unlawful employment actions were taken against Plaintiff in substantial part because of one or more of the following:

    a.     Plaintiff reported an on-the-job injury;

    b.     Plaintiff applied for benefits, invoked or utilized the procedures provided in ORS Chapter 656;

    c.     Plaintiff was off work due to her on-the-job injury as specified by her surgeon and physicians;

    d.     Plaintiff successfully contested at a hearing the Defendant's denial of her workers' compensation claim.

102.     Defendant City changed the terms and conditions of Plaintiff's employment.

103.     Plaintiff had to exhaust paid leave to cover time she missed from work due to her on-the-job injury during the time her claim was denied. Since reversal of Defendant City of

PAGE 18 – COMPLAINT AND DEMAND FOR JURY TRIAL

Portland's denial of the claim, Defendant has failed to repay Plaintiff's for paid leave she took to cover time she missed from work while her claim was being denied.

104.    As a result of Defendant City's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

## NINTH CLAIM FOR RELIEF

### (Oregon Family Leave Act – ORS 659A.150 et. seq.)

Against Defendant City of Portland

105.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

106.    Plaintiff took medical leave protected by the Oregon Family Leave Act (OFLA).

107.    At all material times, Plaintiff suffered from a serious health condition.

108.    Defendant City interfered, discriminated, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, changing Plaintiff's position, job duties, and terminating Plaintiff's employment.

109.    As a result of Defendant City's conduct, Plaintiff suffered and continues to suffer economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

110.    Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including but not limited to, promotions and raises. Plaintiff's economic damages are continuing in nature and are not presently known.

111.    Plaintiff is entitled to an order declaring that Defendant City committed unlawful employment actions in violation of plaintiff's statutory rights, as alleged above.

112.    Plaintiff is entitled to an award for past lost wages and benefits, future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future

PAGE 19 – COMPLAINT AND DEMAND FOR JURY TRIAL

pecuniary losses. Plaintiff's economic damages are continuing in nature and are not presently known.

113.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

114.    Plaintiff is entitled to post-judgment interest on all damages, costs and attorneys' fees from the date of judgment until the date paid.

115.    Pursuant to RS 659A.885 and ORS 20.107, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

116.    Plaintiff also seeks an award for such additional relief as justice may require.

## TENTH CLAIM FOR RELIEF

### (Age Discrimination in Employment, 29 U.S.C. §623 – ADEA)

Against Defendant City of Portland

117.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

118.    Plaintiff's age was a substantial motivating and determining factor in Defendant City changing the terms and conditions of her employment.

119.     As a result of Defendant City's unlawful employment actions, Plaintiff suffered and continues to suffer economic and non-economic damages.

120.    Defendant City's discrimination against Plaintiff by changing the terms and conditions of her employment including terminating her employment violated 29 U.S.C. §623(a).

121.    Plaintiff is entitled to equitable relief, including, but not limited to, reinstatement to employment with Defendant, as well as an award of back pay and lost benefits. If appropriate, Plaintiff should be reinstated and awarded past economic damages in an amount determined fair by a jury.

122.    Defendant City, by and through its agents, acted with the knowledge that its actions violated the ADEA or acted in reckless disregard thereof. As such, Defendant City's

PAGE 20 – COMPLAINT AND DEMAND FOR JURY TRIAL

actions were willful and Plaintiff is entitled to liquidated damages in an amount equal to her economic damages awarded pursuant to 29 U.S.C. § 626(b).

123.    If reinstatement is not appropriate, then Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

124.    The court should enter an order declaring that Defendant City violated the ADEA.

125.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

126.    Plaintiff is entitled to an award of reasonable attorneys' fees and costs incurred herein pursuant to 29 U.S.C. §626(b) and 29 U.S.C. §216(b).

127.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## ELEVENTH CLAIM FOR RELIEF

### (ORS Chapter 659A.030 – Age Discrimination)

Against Defendant City of Portland

128.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

129.    Plaintiff's discrimination on the basis of age as alleged herein constitutes an unlawful employment practice in the terms and conditions of Plaintiff's employment in violation of ORS 659A.030, and caused Plaintiff economic and non-economic damages.

130.    As a result of Defendant City's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages. Plaintiff is entitled to equitable relief, damages, attorneys' fees, costs, and interest as alleged below.

/ / / /

/ / / /

PAGE 21 – COMPLAINT AND DEMAND FOR JURY TRIAL

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

## DAMAGES FOR SECOND, THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH AND ELEVENTH CLAIMS FOR RELIEF

131.    As a result of Defendant City's unlawful employment actions, Plaintiff suffered, and continues to suffer, emotional distress and impairment of her personal dignity and right to be free from discrimination or interference with her statutory or constitutional rights. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

132.    Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including, but not limited to, promotions and raises. Plaintiff's economic damages are continuing in nature and are not presently known.

133.    Plaintiff is entitled to an order declaring that Defendant City committed unlawful employment actions in violation of plaintiff's statutory and constitutional rights, as alleged above.

134.    Plaintiff is entitled to an award for past lost wages and benefits, future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff's economic damages are continuing in nature and are not presently known.

135.    Plaintiff is entitled to compensatory damages for emotional distress, and other nonpecuniary losses in an amount to be proved at trial.

136.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

137.    Plaintiff is entitled to post-judgment interest on all damages, costs and attorneys' fees from the date of judgment until the date paid.

PAGE 22 – COMPLAINT AND DEMAND FOR JURY TRIAL

138.    Pursuant to 42 U.S.C. § 2000e-5, 42 U.S.C. § 1988, ORS 659A.885 and ORS 20.107, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

139.    Plaintiff also seeks an award for such additional relief as justice may require.

## TWELFTH CLAIM FOR RELIEF

### (Wrongful Termination)

### Against Defendant City of Portland

140.    Plaintiff realleges all relevant prior paragraphs as if fully set forth herein.

141.    Defendant City's conduct, as alleged, was in retaliation for Plaintiff assertion of her state and federally protected rights to work in an environment free from discrimination, harassment, and otherwise hostile work environments, and as such constitutes a wrongful discharge under state common law.

142.    Plaintiff's remedies under state statutory law do not constitute a complete remedy for the damage Defendant City has inflicted.

143.    As a result of Defendant City's wrongful termination of Plaintiff's employment, Plaintiff suffered, and continues to suffer, humiliation, anxiety, distress, and impairment of her personal dignity and right to be free from discrimination or interference with her statutory rights. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

144.    Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including but not limited, promotions and raises. Plaintiff's economic damages are continuing in nature and are not presently known.

145.    Plaintiff is entitled to an order declaring that Defendant City committed unlawful employment actions in violation of Plaintiff's statutory rights, as alleged above.

PAGE 23 – COMPLAINT AND DEMAND FOR JURY TRIAL

146.    Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount to be proved at trial.

147.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

148.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## THIRTEENTH CLAIM FOR RELIEF

### (ORS 652.140 – Failure to Pay Wages Owed Upon Termination)

Against Defendant City of Portland

149.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

150.    As of Plaintiff's last day of employment with Defendant City, it had still not restored to Plaintiff her accrued paid time off that she had used to cover her absences for her on-the-job injury.

151.    By failing to restore her paid time off, Defendant City failed to pay Plaintiff all wages due by the end of the first business day after terminating Plaintiff's employment as required by ORS 652.140.

152.    Defendant City's failure to pay Plaintiff all wages due to her continued for more than twelve (12) days after Plaintiff made written notice of Defendant's failure to pay Plaintiff's wages owed.

153.    Defendant City's failure to pay Plaintiff all wages due to her continued for more than 30 days after Plaintiff's wages were due.

154.    Defendant City continues to owe Plaintiff $26,946 for approximately fifteen (15) weeks of paid time off wages to be paid to Plaintiff.

PAGE 24 – COMPLAINT AND DEMAND FOR JURY TRIAL

155.    Pursuant to ORS 652.150, Plaintiff is entitled to a civil penalty in the amount of $10,778.40 for Defendant City's failure to timely pay Plaintiff's all wages owed upon termination.

156.    Defendant City has failed to pay Plaintiff the civil penalty owed to Plaintiff.

157.    Plaintiff has been required to bring this action to recover damages, and is entitled to recover costs, disbursements, and reasonable attorneys' fees, pursuant to ORS 653.055 and ORS 652.200.

158.    Pursuant to ORS 82.010, Plaintiff is entitled to an award of nine percent (9%) pre-judgment interest from the date the money was owed until the date of judgment. Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## VII. PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendants, jointly and severally, as follows:

1.    A sum which will fully compensate Plaintiff for her non-economic damages in a sum that is just as determined by a jury at the time of trial;

2.    A sum which will fully compensate Plaintiff for her economic damages or back pay, front pay, and loss of benefits in a sum that is just as determined by a jury at the time of trial;

3.    An order declaring that Defendants committed unlawful employment actions as alleged above;

4.    Injunctive relief to prevent future discriminatory conduct by Defendants;

5.    Plaintiff's costs and disbursements incurred herein;

/ / / /

/ / / /

/ / / /

PAGE 25 – COMPLAINT AND DEMAND FOR JURY TRIAL

6.    Plaintiff's attorneys' fees; and

7.    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by jury.**

DATED: November 10, 2017

LAW OFFICES OF DANIEL SNYDER

 */s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
John Burgess, OSB No. 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiff

PAGE 26 – COMPLAINT AND DEMAND FOR JURY TRIAL